IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SERGEI KOVALEV, | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : No. 07-4875 |
| THE CITY OF PHILADELPHIA, et al. | : |
| Defendants. | : |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                                       **APRIL 29, 2009**

     Presently before the Court is a Motion for Summary Judgment filed by Defendants, the City of Philadelphia ("the City"), and several City officials and employees[1] against Plaintiff, Sergei Kovalev ("Kovalev"). For the reasons set forth below, the Motion will be granted with regard to all causes of actions.

**I.      BACKGROUND**

     On November 28, 2007, Kovalev filed a pro se Complaint against the City and several City officials in their official capacities, alleging that these City employees intentionally violated his constitutional and federal statutory rights pursuant to 42 U.S.C. §§ 1981-85, and committed numerous tortious acts upon him. Kovalev filed an Amended Complaint on December 3, 2007, and added City employee, Stacey Jones-Culbreth ("Jones-Culbreth").

---

[1] The named City officials are: Robert Solvible, Commissioner of the Department of Licenses and Inspections ("the DL & I"), Joseph Flanagan, Construction Compliance Supervisor of the DL & I, Terrence Dillon, Supervisor of the Contractor Compliance Unit of the DL & I, Stacey Jones-Culbreth, an inspector for the City of Philadelphia Business Compliance Unit of the DL & I, and Angel L. Franqui, Jr., an attorney for the City of Philadelphia Law Department.

Kovalev lives at 5305 Oxford Avenue in Philadelphia, Pennsylvania. On April 29, 2005, Kovalev organized the Centurion Gateway Corporation under the laws of the Commonwealth of Pennsylvania. Kovalev claims that the corporation was formed for the sole purpose of holding Kovalev's property at this address. It conducts no business activity, has no shareholders, and has no assets.[2] On October 6, 2006, Jones-Culbreth issued a notice of violation against Kovalev's property on the grounds that she could not gain admittance to the property to conduct an inspection, as required by the City Code of Ordinances. Kovalev contends that his property is not subject to inspection by the Business Compliance Unit because he conducts no business on the premises. As such, he asserts that the Business Compliance Unit, in attempting to inspect his property, attempted an illegal search of his residence, in violation of the Fourth Amendment. He further contends that the City attempted these inspections because his property is located twenty feet from State Senator Christine Tartaglione's office. Kovalev asserts that Senator Tartaglione sought to use the City, through her familial relation to several City employees, to find out what was occurring inside Kovalev's residence,[3] and to ultimately reduce the value of his property. Kovalev states that he appealed this violation to the Board of Licenses and Review ("the Board") on February 12, 2007, and that they simply "rubber-stamped" the violation decision. He added that they ignored his arguments and refused to listen to him. Kovalev claims that the Board discriminated against him and refused to consider his arguments because he is a foreign-born

---

[2]Kovalev also asserts that in 1986 he founded a church called the International Church of Eternal Revival which is located on his property.

[3]Kovalev alleges that John Duffy, who worked for Senator Tartaglione, admitted that he personally placed numerous calls to the City and informed them of possible business activity on his property. (Compl. ¶ 76.)

United States citizen of Eastern European origin.[4]  (Compl. ¶ 86-88.)

On June 1, 2007, the DL & I issued a second notice of violation against the property for Kovalev's failure to obtain a building permit prior to erecting a 162 square-foot structure in the rear of his home.  Kovalev maintains that the structure did not require a permit pursuant to the City Code, and he was preparing his building for his own charitable church activities.  After receipt of the violation, Kovalev met with Terrence Dillon ("Dillon"), a supervisor at DL & I, and was told that the structure was an "addition" and required a permit.  Kovalev avers that he was willing to obtain the required permits for this structure, and he prepared plans and applied for the permits on June 8, 2007.  After approximately two months, Kovalev learned from Joseph Flanagan ("Flanagan"), a Construction Compliance Supervisor with the DL & I, that Flanagan was unable to understand the plans and did not understand what Kovalev had built.  On August 13, 2007, Flanagan informed Kovalev that he had looked at the application but would likely not be able to issue any permits because the plans were so confusing.  Flanagan then requested that Kovalev submit drawings prepared by a licensed professional so that he could process the application.  Kovalev avers that there was nothing confusing about the plans, and that Flanagan intentionally required additional plans and delayed the issuance of his permits for the sole purpose of harassing Kovalev and inflicting emotional distress upon him.[5]  He additionally

---

[4]Kovalev also infers the City is somehow responsible for an incident that happened to him twelve days after this decision on February 24, 2007, when he was struck by a car upon exiting a store.  Kovalev claims that the driver acted like he did not see him, but he saw the "face of the driver looking at [him] when he was hitting him with his car." (Pl.'s Resp. Mot. Summ. J. at 15.)

[5]Kovalev also claims that, in numerous phone calls to Flanagan concerning the status of his permits, he was not only harassed by Flanagan, but threatened with "retaliation, and possibly with physical injuries or even death." Kovalev alleges that Flanagan told him during a phone

claims that the City continually denied his application with no reasonable justification so that it could collect the violation costs for its own financial gain.

On November 5, 2007, Kovalev wrote letters to the former mayor of Philadelphia, John Street, and to the Commissioner of the DL & I, Robert Solvible, describing the alleged abuses he endured in trying to obtain the permits. Kovalev stated that four days after the submission of the letters, the City, through its attorney, Angel L. Franqui, Jr., Esq., filed two Complaints in Philadelphia Municipal Court claiming that Kovalev's corporation failed to file and pay the City's business privilege tax from 1997 through April 16, 2005. Kovalev argues that the allegations in these Complaints were completely false, and that the action was filed in retaliation for the letters he sent to the mayor and commissioner disclosing the City's violations and abuses. These actions were later dismissed, but Kovalev claims that they are clear evidence of a conspiracy against him for revealing corruption and violations in the City departments. (Pl.'s Resp. Mot. Summ. J. at 19.)

Kovalev also states that, on February 14, 2008, almost eight months after he filed an application for permits, he received a letter from Flanagan denying his application. Kovalev claims all the refusal reasons given by Flanagan in the denial were "false and completely fabricated by him in an attempt to cover up his illegal activities in the capacity as one of the supervisors for the City." (Pl.'s Resp. Mot. Summ. J. at 19.)

On February 15, 2008, the City filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) asserting that Kovalev had failed to state a claim under § 1983, and that his tort claims were barred by Pennsylvania's Political Subdivision Tort Claims Act. In a Memorandum and

---

conversation that he was "finished" if he filed legal action against the City. (Compl. ¶ 147-48.)

Order dated March 25, 2008, this Court granted the Motion in part and denied it in part. <u>Kovalev v. City of Philadelphia</u>, No. 07- 4875, 2008 WL 783564, at *2-3 (E.D. Pa. Mar. 25, 2008). The Motion to Dismiss was granted with respect to Kovalev's claims for harassment, intentional infliction of emotional distress, and abuse of process, and denied with respect to his claim pursuant to § 1983. It was also ordered that Kovalev's Motion for Allowance and Joinder of Defendants was denied as his claims against City officials in their official capacities were duplicative of his claims against the City itself.

On April 28, 2008, this Court entered a Scheduling Order, setting a discovery deadline of July 31, 2008, and a Motions' deadline of August 18, 2008. Kovalev filed a total of six Motions in May, June, and July 2008.[6] The City, however, only timely responded to Kovalev's Motion to Compel Defendants to Produce Requested Documents (Second Set) on August 18, 2008. Instead of filing timely responses to Kovalev's five outstanding Motions, the City ignored these Motions

---

[6]The following Motions were filed:

"Motion to Compel the City of Philadelphia to Secure for the Trial Court Presence of its Employees and Officials Possessing Knowledge of the Facts Alleged in the Plaintiff's Complaint";

"Motion to Compel Defendant to Produce Requested Documents";

"Motion for Leave to Serve Additional Interrogatories";

"Motion for Allowance of Amendment and Addition of Defendants";

"Motion to Compel Defendant to Produce Requested Documents (Second Set)"; and

"Motion to Compel Defendant to Produce Requested Documents in Possession of City Employee Angel Franqui."

and filed a Motion for Summary Judgment on August 19, 2008.[7] We contacted the attorney handling this case for the City and inquired whether the City intended to file answers to the outstanding motions. We were informed that the City would promptly file such. However, responses were not filed, and we scheduled oral argument on the Motions on October 21, 2008. At this hearing, the City was ordered to file responses to all of the outstanding Motions. The City, subsequently, did file such responses.

Several of these Motions were granted in part and denied in part. Kovalev was permitted to conduct some additional discovery, and to amend his Complaint to add causes of action under the Religious Land Use and Institutionalized Persons Act (42 U.S.C. §§ 2000cc-1, et seq.), and the First Amendment. He was also permitted to add Dillon, Flanagan, Franqui, and John Doe/Jane Doe in their individual capacities. Kovalev subsequently filed a Second Amended Complaint reasserting his claims under 42 U.S.C. §§ 1981, 1983, and 1985, and added a cause of action under the First Amendment.[8] Defendants assert that summary judgment should be entered in favor of them on all causes of action.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." See Hines v. Consol. Rail Corp., 926 F.2d 262, 267 (3d Cir. 1991). The Court asks "whether the evidence presents a sufficient disagreement to require submission to the jury or

---

[7]Kovalev filed his own Motion for Summary Judgment on August 18, 2008.

[8]Kovalev did not, however, add a claim pursuant to the Religious Land Use and Institutionalized Persons Act. In addition, Kovalev never added a John Doe/Jane Doe as a defendant in his Second Amended Complaint.

whether . . . one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "A fact is material if it could affect the outcome of the suit after applying the substantive law.  Further, a dispute over a material fact must be 'genuine,' i.e., the evidence must be such 'that a reasonable jury could return a verdict in favor of the non-moving party.'"  Compton v. Nat'l League of Prof'l Baseball Clubs, 995 F. Supp. 554, 561 n.14 (E.D. Pa. 1998).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Once the moving party has produced evidence in support of summary judgment, the non-moving party must go beyond the allegations set forth in its pleadings and counter with evidence that presents "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992).  "More than a mere scintilla of evidence in its favor" must be presented by the non-moving party in order to overcome a summary judgment motion.  Tziatzios v. United States, 164 F.R.D. 410, 411-12 (E.D. Pa. 1996). If the court determines that there are no genuine issues of material fact, then summary judgment will be granted.  Celotex, 477 U.S. at 322.

### III. DISCUSSION[9]

**A. Municipal Liability**

We will first address Kovalev's causes of action against the City itself. As outlined above, Kovalev's Complaint asserts claims against the City pursuant to 42 U.S.C. § 1983. Section 1983 reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

42 U.S.C. § 1983. In evaluating a § 1983 claim, a court must first "identify the exact contours of the underlying right said to have been violated . . . to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998). "A municipality cannot be held liable solely because it employs a tortfeasor." Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 691 (1978). Instead, the plaintiff must assert that an actual policy or custom of the municipality was the cause of the constitutional

---

[9]Kovalev first maintains in his Response to this Motion that the City is arguing that claims be dismissed that this Court already decided and denied in an earlier decision. Kovalev, however, is misguided. While we did rule on a City's Motion on March 25, 2008 and allowed his claims against the City under § 1983 to continue in this litigation, such motion was a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Obviously, the legal standards for a Motion to Dismiss and a Summary Judgment motion are entirely different. Under a 12(b)(6) standard, this Court was obligated to accept as true all well-pleaded allegations in the Complaint, and view them in a light most favorable to the Plaintiff. Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001).

deprivation. Id.  In order to sufficiently allege "custom" for Monell purposes, a plaintiff must allege that the "practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." Id.  An official-capacity suit is essentially a suit against the municipality itself.  See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  "To prevail in an official-capacity suit, a plaintiff must demonstrate that the entity was the 'moving force' behind the officer's actions.  In general, this is accomplished through demonstration of the entity's policy or custom." Klump v. Nazareth Area Sch. Dist., 425 F. Supp. 2d 622, 644 (E.D. Pa. 2006).

A government policy or custom can be established in two ways.  Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict.  Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well settled" as to virtually constitute law.  Monell, 436 U.S. at 690.  See also Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d. Cir. 1990).

In his Complaint and in his Response to the City's Summary Judgment Motion, Kovalev has set forth a laundry list of allegations that the City has an "unofficial policy of overlooking corruption."  (Pl.'s Resp. Mot. Summ. J. at 37.)  An example of one his assertions reads as follows:

> The city of Philadelphia, defendant, in this matter, has adopted, maintained for many years and still maintains a recognized and accepted policy, custom and/or practice of condoning and/or acquiescing illegal activities inside the City departments and administration, such as profiling of United States citizens residing

> in Philadelphia for the purposes of harassment, discrimination, violation of U.S. constitutional rights, violation of religious rights, intimidation, extortion of monetary funds and other racketeering activities against selected citizens.

(Pl.'s Resp. Mot. Summ. J. at 37.)

Kovalev, as outlined above, has also set forth a series of encounters with a number of DL & I officials, and several other City employees. Kovalev has, however, failed to produce any evidence that establishes that any alleged wrongful dealings with him amount to a policy or custom of the City in order for the City to be liable to him for any wrongful acts on the part of its employees pursuant to § 1983. Accordingly, all claims against the City are dismissed on summary judgment.

### B. Constitutional Violations

#### 1. Fourth Amendment

Kovalev asserts that inspector, Jones-Culbreth, of the Business Compliance Unit of the DL & I, issued a violation against his property on October 6, 2006, in an attempt to "search his private property for illegal purposes without a search warrant." (Pl.'s Resp. Mot. Summ. J. at 32.)

The Fourth Amendment provides that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

"The basic purpose of this Amendment, as recognized in countless decisions of this

Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." Wolf v. People of Colorado, 338 U.S. 25, 27 (1948). As such, the Fourth Amendment is enforceable against the States through the Fourteenth Amendment. Ker v. State of California, 374 U.S. 23, 30 (1962). Search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant. Stoner v. State of California, 376 U.S. 483 (1964); United States, 342 U.S. 48 (1951).

      The Supreme Court, in Camera v. Municipal Court, 387 U.S. 523, 526 (1967), refused to find a distinction between an "inspection" and a "search" and held that a warrant is required for a home inspection even when the home inspection is part of a routine regulatory scheme. In Maffucci v. City of Philadelphia, No. 98- 2718, 1999 WL 320940, at *4 (E.D. Pa. May 20, 1999), this District discussed Camera and held that, absent consent, a building code inspector must obtain a warrant supported by probable cause to search plaintiff's home for permit violations. The Court added that "it is well established that, when a city inspector without consent or court authorization enters a property for purposes of inspecting for Code violations, a constitutional violation is found." Id.; see also Haefner v. City of Philadelphia, No. 03-4495, 2005 WL 525404, at *2 (E.D. Pa. Mar. 4, 2005). Thus, in order for the DL & I to inspect Kovalev's premises without his consent, a search warrant would be required.

      Here, however, it is difficult to ascertain from Kovalev's Complaint if he is asserting that the City inspector(s) actually did conduct a search of his premises or just attempted to. His Response to the Summary Judgement Motion indicates that he is claiming only attempts to search his premises. Kovalev states that the "City with participation of its employee never stopped attempts to search plaintiff's property without proper court issued search order." (Pl.'s

Resp. Mot. Summ. J. at 32) (emphasis added). Moreover, Kovalev fails to offer any evidence that a search of his property, legal or otherwise, ever took place by Jones-Culbreth or anyone else from the City.

The only mention in the record of any kind of inspection of Kovalev's premises is from his own deposition. Kovalev testified:

> Q: Mr. Kovalev, when they [City inspectors] came to your property on June 1, 2007, did they ever go inside your home?
> A: They asked if they could look at my structure.
> Q: Did they go inside your home?
> A: No. They go inside and looked at the structure I built.
> Q: And that's the structure on the deck?
> A: Right.
> Q: Did you permit them to do that?
> A: Yes. They saw room was separated from my end wall of the building, like four-and-a-half feet. It's not connected to my own building. It was used for some kind of like my tools. I open door, I show them inside. It's not use for any living purposes; it's just for some kind of like - -
> Q: What was inside at the time?
> A: Some of my tools.
> Q: Did they go anywhere else on your property that day?
> A: They just inspected this room.
> Q: Just the room?
> A: Mm-hmm.

(Kovalev Dep. 34-35.)

It is well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); Davis v. United States, 328 U.S. 582, 593-94 (1946). Here, it is apparent from Kovalev's testimony that any inspection of the structure that was built on the deck of his home was done so with his consent. Accordingly, there is no genuine issue of material fact, and summary judgment as to this claim is granted.

## 2. Procedural Due Process

Kovalev next alleges that his procedural due process rights were violated as a result of the DL & I's denial of his permit application and his appeals to the Board of Licenses and Inspection Review. Under well-settled case law of this Circuit, when a state "affords a full judicial mechanism with which to challenge the administrative decision" at issue, it provides adequate procedural due process, irrespective of whether a plaintiff avails himself of the provided appeal process. DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 597 (3d Cir.1995), overruled on other grounds, United Artists Theatre Circuit v. Twp. of Warrington, 316 F.3d 392 (3d. Cir. 2003); Midnight Sessions, Ltd. v. City of Phila., 945 F.2d 667, 680 (3d Cir. 1991). Indeed, "[i]t is the law of this Circuit that a state provides adequate due process when it provides reasonable remedies to rectify a legal error by a local administrative body." Bello v. Walker, 840 F.2d 1124, 1128 (3d Cir.1988).

The Pennsylvania Municipal Code provides that a zoning board shall have exclusive jurisdiction to hear and render final adjudications in appeals from the determination of a zoning officer, including, the grant or denial of any permit. 53 Pa. Stat. Ann. § 10909.1(a)(3). The Municipal Code further provides that an appeal of any decision of a zoning hearing may be appealed to the Court of Common Pleas within thirty days. 53 Pa. Stat. Ann. § 11002- A.

Here, Kovalev was not denied due process since he availed himself of the appeal process under these codes. As noted above, he appealed the DL & I's denial of his permit application to the Board of Review as well as the notice of violation issued by Jones-Culbreth. The fact that he was not successful in those appeals does not mean that his due process rights were violated as he was, nonetheless, given his opportunity to be heard. Thus, this claim is also dismissed.

### 3. Equal Protection

Kovalev also claims that the DL & I's denial of his permit application was based on his status as an Eastern-born foreign minority, and that such denial violated his rights under the Equal Protection Clause of the Fourteenth Amendment.

This Clause states that no state shall "'deny to any person within its jurisdiction the equal protection of its laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To state a viable equal protection claim based on purported selective treatment, a plaintiff must allege: (1) he was selectively treated compared with others similarly situated, and (2) the selective treatment was motivated by an intent to discriminate on the basis of impermissible considerations, such as race or religion, or by a malicious or bad faith intent to injure, or to inhibit the exercise of constitutional rights. Nuway Envtl. Ltd. v. Upper Darby Twp., No. 03-5375, 2006 WL 212289, at *6 (E.D. Pa. Jan.23, 2006).

However, as with his previously discussed claims, Kovalev again has presented no evidence other than his own accusations that the DL & I selectively treated him differently from others similarly situated when they cited him for a violation and denied his appeals, and that any of this purported selective treatment was based on his status as a foreign born minority. Accordingly, this claim fails as well.

### 4. First Amendment

Kovalev next asserts violations of his First Amendment rights. As outlined in the factual history above, Kovalev states that he wrote letters on November 5, 2007 to the former mayor of

Philadelphia, John Street, and to the Commissioner of the DL & I, Robert Solvible, describing the alleged abuses he endured in trying to obtain permits.  Kovalev claims that four days after the submission of the letters, on November 9, 2007, the City, through its attorney, Angel Franqui, filed two Complaints in Philadelphia Municipal Court claiming that Kovalev's corporation failed to file and pay the City's business privilege tax from 1997 through April 16, 2005.  Kovalev argues that these actions were filed in retaliation for the letters he sent to the mayor and commissioner disclosing the City's violations and abuses, and that such retaliation violated his First Amendment rights.

The elements of a retaliation claim under 42 U.S.C. § 1983 predicated on violation of the First Amendment are as follows: (1) plaintiffs engaged in a protected activity, (2) defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) a causal connection between the protected activity and the retaliatory action. See Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006); Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003).  A defendant may defeat a claim of retaliation by showing that he would have taken the same action even if the plaintiff had not engaged in the protected activity. See Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002); Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

To establish the requisite causal connection, a plaintiff usually must prove either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997).  In the absence of that proof, the plaintiff must

show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000).

Here, again, nothing in the record supports Kovalev's allegations that the Complaints filed in the Municipal Court were filed in retaliation for the letters that he sent to Mayor Street and Commissioner Solvible.  Thus, this claim is dismissed.[10]

### C. Statutory Violations

#### 1. Conspiracy under 42 U.S.C. § 1985

Kovalev argues that a conspiracy existed among employees of the DL & I to deprive him of his rights as a citizen of the United States.  Section 1985(3) permits an action to be brought by one injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). The United States Supreme Court has made clear that in order to state a claim under § 1985(3) a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or

---

[10]Kovalev also infers that the City's attempts to regulate the construction at his property interfered with his free exercise of religion in violation of the First Amendment.  He asserts that in 1986, he founded the International Church of Eternal Revival, that his property was used for the benefit of his church, and that any construction or improvement to his property was done in an act of worship to God.

The Free Exercise Clause applies to states and local governments through the 14th Amendment.  Cantell v. Ct, 314 U.S. 296, 307 (1940).  Kovalev, however, has offered no evidence that the City or any of its employees interfered with his exercise of religion to support a First Amendment claim.

deprived of any right or privilege of a citizen of the United States." United Bd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29 (1983); see also Griffin v. Breckenridge, 403 U.S. 88, 91 (1971); Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006). In addition, a "claimant must allege some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action in order to state a claim." Farber, 440 F.3d at 135 (quoting Griffin v. Breckenridge, 403 U.S. 88 (1971)).

In this case, Kovalev asserts that a number of individuals from the DL & I performed illegal acts against him, for example, Jones-Culbreth issuing him a violation and attempting to inspect his property, and Flanagan refusing to issue any permits. This claim will be dismissed for a number of reasons. First, Kovalev has not produced any evidence that a conspiracy existed among the City employees named. He has also presented no evidence that these actions were taken with the intent to deprive him of equal protection of the laws. Thus, this claim fails as well under this summary judgment analysis.

### D. Qualified Immunity

As stated above, Kovalev has brought suit against City employees Flanagan, Dillon, Jones-Culbreth, Franqui, and Solvible claiming that each violated his statutory and/or constitutional rights. The City maintains that these individuals are entitled to qualified immunity from suit in this action.[11] We agree.

---

[11]Government officials are accorded qualified rather than absolute immunity in order to accommodate two important interests: the officials' interest in performing their duties without the fear of constantly defending themselves against insubstantial claims for damages, and the public's interest in recovering damages when government officials unreasonably invade or violate individual rights under the Constitution and laws of the United States. Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995) (citing Anderson v. Creighton, 483 U.S. 635 (1987)).

In the seminal qualified immunity case, Harlow v. Fitzgerald, 457 U.S. 800 (1982), the Supreme Court articulated the oft-quoted legal standard for analyzing a qualified immunity defense: "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court held, that a ruling on qualified immunity must be undertaken using a two-step inquiry.  First, the court must consider whether the facts alleged, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right.  If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity.  See also Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir.2002).  If, however, "a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established." Saucier, 533 U.S. at 201.  "The relevant dispositive inquiry" in making this determination is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 202.  If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity.  Id.; see also Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004).

"Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right.  Only if the plaintiff carries this initial burden must the defendant then demonstrate that no genuine issue of material fact remains as to the objective reasonableness of the defendant's belief in the lawfulness of his actions." Godshalk

v. Borough of Bangor, No. 03- 5375, 2004 WL 999546, at * 9 (E.D. Pa. May 5, 2004).

In this case, as already discussed several times, Kovalev's statutory and/or constitutional rights have not been violated by any of the named individual defendants under the first prong of the Saucier test.[12]  Accordingly, they are each entitled to qualified immunity, and the second element of the Saucier test need not be addressed by this Court.[13]  Summary judgment is, thus, granted as to all of Kovalev's causes of action and in favor of all defendants.

An appropriate Order follows.

---

[12] Kovalev's cause of action against Solvible should be dismissed for an additional reason. Supervisory liability cannot be based solely upon the doctrine of respondeat superior since there must be some affirmative conduct by the supervisor that played a role in the discrimination. Rizzo v. Goode, 423 U.S. 362, 377 (1976).  The necessary involvement can be shown in two ways, either "through allegations of personal direction or of actual knowledge and acquiescence," or through proof of direct discrimination by the supervisor.  Andrews v. City of Phila., supra. Here, there is no evidence in the record of any affirmative conduct by Solvible that played a role in any act of discrimination against Kovalev.

[13] Even assuming this Court considered the second step of the Saucier qualified immunity test, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," Id. at 202, Kovalev has failed to submit evidence that any of these City employees had reason to believe that any of their actions were unlawful.